Yes, good morning Keith Rutman on behalf of Frank Francisco Cortez I'd like to first thank the court for the opportunity to participate at this special Sitting today. I'd like to reserve two minutes of rebuttal time. Okay, Mike. Thank you. Just keep your eye on that clock. Yes, sir The honor is as we see this case To us presents as an intersection between the First Amendment and the Fourth Amendment Certainly you have the right to question a law enforcement officer about the decisions he is Making the questions he is asking and Frank special agent Cortez acted no differently than any law enforcement officer Let me ask you some of the basic question. You had a trial here, right? Yes, sir. Okay, and So this is not a case where there were inferences and the like and you said we don't want to present a trial fact You had a chance to present a trial fact the trial fact looked at What sound to me like basically? Undisputed not heavily disputed facts in terms of the physical events and then drew certain Inferences as to what happened and the trial fact came out and said your client was the one that was being difficult And that's correct. You could look at the very same record very same situation and read it the other way Which is the way you would like us to read it, but that's not what we're doing up here, right? We have two possible inferences Available on the record. We have to go with trial fact. That's correct So what what what what have you got left? Our position is that just being difficult with a law enforcement officer does not rise to the level of justifying a conclusion that there's Reasonable suspicion to continue with detention. It is clear in the court judge Not much happened to him he was sent to secondary which happens to gazillions of people every day They're Temecula, I mean there are these in one checkpoints and we can Dispute or argue about whether they're a good idea or whether they're constitutional, but we've had the Supreme Court has said they are constitutional You don't need our cause or anything at all to pull some of the secondary and Not much else happened to your client Well, he testified from his perception that he felt he might be a victim of what law enforcement officers called blue on blue Right, and that's right. He did and the trial fact Disagree with him. Well, that's how that's what his feeling about the situation, right? And and the trial fact heard the participants tell their story and said no What was going on is he was being asked legitimate questions, and he didn't cooperate But to answer your question that his feeling goes to the damages that he might have asserted had we been able to said we made Obtained a finding of liability his person was the beef here. What's what exactly what did they step out of line? Well, it was clear that he had that they had the right to send him to secondary inspection But I guess without anything at all without anything We don't like the color of your eyes or you know, whatever you look suspicious to me Nothing at all because it's a border that's inland border checkpoint, right? But let's remember what the situation was at that particular border checkpoint and look at the big picture There was some tension at that Border Patrol checkpoint because a Border Patrol officer had recently been the victim of a murder So there was some heightened Anxiety if you will at that Border Patrol checkpoint that was not unreasonable, and it was not Unanticipated and this was known to the trial that was known to the trier fact. Yes agent Cortez committed. No He was speeding and his windows were tinted Which was what the agent called the yaka observed when she saw him about 12 and here the car that didn't register in, California That's correct. That wouldn't show his ID, right? They asked him for the ID And and he said why he wouldn't show it right back when he did finally show his credentials. They said, okay, you're free to go Well, that's I don't necessarily agree that that's exactly how it Played out judge Akuta, but if I could get back to judge Kaczynski's question first and then come to your question The collective knowledge doctrine which applies in every law enforcement Fourth Amendment context Presumes that the officers on the field have the knowledge of other officers Who may not be at the scene and their training officer special agent Scott? Testified that they have the ability to contact law enforcement or DMV and do a further check into The license plate status and if that was the critical inquiry then the law enforcement officers would be charged with that knowledge Agent Kobayaka testified that she I'm sorry. I have no idea what you said You can charge collective knowledge, but you can't can you say collective computer knowledge? I've never heard of that. You could have found out if you just gotten on Google or something No, they knew they had the ability to check further with the name got a car moving on a highway I mean, it's not stationary. They haven't got it stabilized. It is moving on the highway They find they see tinted windows. They see Speeding a speeding and they see an unregistered car They don't know anything else. They could inquire they could make other inquiries, correct But what how does that help you? Well, well, why is not enough to say look when the guy comes to secondary? We don't need any reason whatsoever to send to the secondary, right? Well, I mean when he comes to the checkpoint, we're gonna send this is enough for us to send them. That's correct I can do it, right But that was the calculus that they were considering when they were engaging with him at secondary that made the detention prolong But what about judge? You could as well. So as soon as he pulls his ID And shows his ID they sent him on his way. Well, what happened? As I recall the record is that he was asked at primary Can I see your license and he asked why and that's when he was sent to secondary at secondary? He was again asked, you know, just for what it's worth if they ever asked me, you know, I just show my ID Well, you know whether whether it's a with a traffic cop or border patrol or anything else. I Pulled my ID and I showed her that's just They have this hostile person who says Eventually, I'm a law enforcement. I'm armed, but I won't show you my ID. Well It seems like a pretty scary situation. He has three guns. He has it. He's armed He says he has a gun on the seat next to him And he won't show his ID showing his law enforcement because he tried to talk it through with these officers He testified in his training. Well, that that's what prolonged the detention I think had he pulled out his identification and shown it to them. He'd be well on his way As to when the detention ended the district court did make a specific Factual finding that when the agent saw his identification they let him go. So at that point It was no longer detention, correct? Because he wanted to complain to a supervisor regarding the detention, right But the testimony also was that his credentials had been taken from him and his gun had been taken from him as well And he needed to get both of those back and they also the testimony was that the agent the supervisor was on his way Agent Pratt was on his way and therefore what he didn't need to wait for the supervisor. He could show His driver's license at least he I understand his his his his Law enforcement ID was in the bag and I I fully appreciate I understand that you don't go reaching into bags when when you're being stopped by law enforcement You show your hands and you don't reach any secret places, but he can certainly when asked for his Driver's license he can do that. He could have reached. He didn't he didn't he didn't need to wait. He didn't need to wait for for For the supervisor, he didn't need to wait for the supervisor to show his driver's license But the testimony was that he was not specifically asked for his driver's license the he didn't Ask for his driver's license, but he didn't refuse to give his driver's license He asked why in that at that very moment He was sent to secondary which raised some concerns on his part and raised concerns on the part of the Border Patrol Officers as well. And at that point it's a very tense situation He's trying to do what he can to satisfy them without placing himself or them in danger as well It could be dangerous for everybody. I don't think that and under these circumstances his vastly superior law enforcement Experience to these officers is something that can be just completely ignored in the calculus of what's going on He's telling them he's a law enforcement officer. They clearly don't believe him Testified that his credentials could be forged which is the experience that they've had driver's licenses can certainly be forged Registration of vehicles can certainly be stolen or altered or forged. Well, those are hypotheticals. Did he produce his identification? Eventually he did it was taken from him from the bag that he identified on the front seat of the car where it was the entire time just as he said so I so what's the beef again, I mean, you know, they they They are Frequently presented with forged documents. Yes. So at that point they presumably call again They say well, you know, we've got this guy who looks like I mean his ID that looks like Law enforcement ID, right? They can't just they don't need to just let him go based on that Needs to check it out. There's no Nothing in the record Because I know from my own part I didn't think to ask at the time But now I'm thinking this would have been a good question at the time Even if the driver's license is forged it and that it has his name in his picture But it's a fake ID because his name is really Joe Smith that doesn't tell anything to the border patrol officers about the nature of the vehicle they were suspicious because of the registration issue with respect to the car not necessarily because of his identification because They're not unrelated They're not unrelated. I mean the vehicle is being driven by an individual if the vehicle is not registered. It could be stolen but it The fact that it's stolen doesn't end it there. It's not just a stolen vehicle issue often stolen vehicles Are used for smuggling why because people don't want to use their own vehicle so it doesn't get traced to them So you stole me and they get forfeited as well to the government. The government can forfeit it. That's right. So so Until they untangle this why isn't 45 minutes of the secondary a reasonable amount of time to take? Or to rephrase the question Why isn't it? How can we reverse a trial facts finding it was reasonable to detain him for 45 minutes to untangle this? Well, I think the officers are charged with taking the most expedient reasonable steps to investigate what they're talking about. Okay, so what would you have had him do? Well, hypothetically if they had gotten his Credentials if he had produced his credentials, but he didn't he didn't not produce his credentials. So we can't sort of When I say what would you have him do I can't rewrite what your client did we have to sort of take what your client Is a given so given what your client did which is instead of buying a driver's license saying? Why you asked me for it? Well What they I am I am guessing that your client if you got an answer like that in his job for a suspect Would not take it kindly and would would have his suspicion raised Is what I is what I would guess would have at one point now He's an undercover officer making by so he doesn't really take that approach with the people he's dealing with but What I what they should have done is what I tried to he could be here, right? I'm sorry for all we know He could be he is not I did ask him to be here, but the demands of his They could have called in and done so he says They could have called in and done further investigation into the license plate which they had the ability to do from the absent Which is I think one of the very first issues. Well, if you know, it might be a government Car you might see it differently, but they must get tons of cars and But but it was it could it could it could be it wasn't specifically didn't specifically it didn't say, California government, right? It said no record on file. That's not According to the testimony we had the same so that could be a forged license plate. It could be a forged license plate It could be As it was in this case an undercover government vehicle that is designed to be recorded that way for the protection of Agent court and presumably he'd be detained the entire time. This investigation is going on, correct? Well Not this it just I mean they can't they can't let him go pending the investigation Do they figure out what's going on? It depends on how long that takes because remember agent called Bianca when she radioed in this information her testimony was I assumed the agent at Primary was listening to me and would conduct this investigation into the vehicle before I got there. That's what she said That's why she radioed it in they had several minutes to conduct. This is late at night It wasn't particularly busy at this particular checkpoint at this time There were three agents available and agent Pratt all of whom had the ability to request a further records check That's what the expert testimony was from supervisor supervisor You down to a minute training training officer the training officer, thank you very much It's our position that even accepting the you're not gonna reserve the minute. I'm sorry. I thought I did reserve a minute I misread the clock I'm sorry If I have there's no further question when it goes to zero in the first digit to meet you unless in a minute And when I say you've got a minute, it's a minute. We'll make it a minute. Anyway, how about that? Okay. Thank you. Unless the court has any further questions. It's our position only if you stop talking Okay, we'll hear from opposing counsel This is a case about a routine inspection at the Pine Valley Border Patrol checkpoint This is that this is an inland checkpoint, right? And I'm not familiar with Those this he was traveling parallel to the border, right? He was traveling west from El Centro to San Diego And there's a I'm familiar with the checkpoints north-south in Temecula and San Onofre There are similar checkpoints along the road east-west between El Centro and San Diego He did not go through a border he was in And you have to go past the in the checkpoints And those are staying on the same footing as the north-south check The primary inspection routine questions were asked and they didn't resolve the inspectors immigration investigation He as he was permitted to do without any reasonable suspicion referred mr. Cortez to secondary Well, it wasn't much of a conversation He says give me a driver's license. He says why do you ask and Go to secondary. It wasn't Really an in-depth investigation. I think he did ask the citizenship I think he asked where he was traveling from and where he was traveling to And the final question for the referral was And again once he was in secondary inspection it was border patrol he got sort of sassy answers And then once in secondary inspection border patrol agents met took over and initiated routine questions again But that routine questioning is not limited to immigration matters, correct? Or or is it the government's position that the detention at secondary? Inspection was merely for purposes of questioning related to immigration matters I it's the government's position that that the immigration inspection was never resolved Until the canine ran around the car. So the immigration inspection was still ongoing From start to finish at secondary inspection, which which would provide that reasonable suspicion was not needed at any point during the secondary inspection Based entirely on mr. Cortez's behavior the length of the detention was completely Dictated by mr. Cortez and his failure to provide answers. How long was the detention at secondary? It from the moment he was referred to secondary up until the time he produced his identification was free to go I'm not sure I Don't think that's in the record the exact time that he was in secondary inspection So our case law has a continuum. There is no suspicion necessary for The border fixed check checkpoint search and then at a certain point reasonable suspicion is required which is also fairly low articulable suspicion, but then somewhere in the middle we have a Minimal suspicion or suspicious circumstances, which is required when you hold Someone over for a dog sniff say or for continued detention. We have that in in our Taylor case So why wasn't there a need here for at least the minimal additional suspicion and if so was there? That there wasn't that the need for the additional suspicion and suspicion in this matter because unlike in the Taylor case In Taylor the immigration inspection had been resolved at the point. They decided to run the canine around the vehicle in this In the Cortez situation, they hadn't resolved anything by the time they were in secondary. And are you saying that the immigration? Investigation wasn't resolved because they hadn't yet seen his driver's license or credentials or why? Maybe it was because they hadn't seen the inside of the vehicle. There could have been aliens Hidden in the vehicle either the trunk the vehicle had dark tinted windows. The agents couldn't see inside in the backseat There there still was a risk of there being unlawful Now To the first of the secondary we don't need any special But that still means it can't do it for an impermissible reason they couldn't for example say we're going to send all Hispanic Men Correct Okay, so why isn't this a case or at least The reason he was on the secondary was for these reasons and he was being sassy and the officer you know, he's only exercising his first amendment right to be sassy to the government the government agent and He was being punished for that and he sent a second and we do have case on the circuit Long time ago long long time ago probably long when we were in high school. That was an opinion case. I may not forget. Where somebody gave an obscene hand signal to a policeman You can imagine what it was And and was stopped for that reason and we held and I think it's still going on in that circuit Even if stops, otherwise permissible becomes impermissible So, why isn't that the situation here I think we there's no evidence of pretext in the record We also have case law that That says without objective evidence of the pretext. We don't look to the subjective intent of the primary inspector So we never get to that point. We have no objective evidence of pretext here There was no no such allegations by Mr. Cortez I thought there were At least counsel Mr. Kurtner Argued that that this was sort of a blue on blue situation The court did not credit them Those allegations and so with on on the factual findings that we have we have no objective evidence of pretext here Did the court actually rule on that? The court did speak to she She found the district court judge found that Mr. Cortez was frustrated because he believed that the intent for the stop was for traffic violations Okay, I Think that that's the closest we get to her finding regarding his his state of mind You don't think we need a specific finding as to whether or not this was Was or was not an retaliation from speaking up I know we what we also we don't have the testimony of agent Fulton who was the primary inspector He didn't testify at trial So we only have the Plaintiff did correct and and the judge found his version of events not to be credible I mean, I can also touch on Mr. Cortez is asserting a First Amendment right here. I think we can agree that there was no nothing preventing Mr. Cortez from saying what he did no one prevented him from expressing his opinions and he did that it was unwise Most of us would not Be very polite But the results of expressing his his opinions But he had the right to do it nevertheless And it what it did was lengthen his experience at the Pine Valley checkpoint But but that's his claim. His claim is that they made it much longer than it needed to be Because they weren't happy with his attitude And and and I think the district court disagreed and specifically found that the agents acted appropriately and had legitimate reasons Okay, anything further Thank you Versus City of Douglas 1987 I think it was 1990 but I was practicing that so the years merge But the court was right criticism of the police, however unwise is not you have a claim like that So I don't think anybody disagrees that Such a claim can't be raised But the opposing counsel says it's supposed to raise Or alternatively if it was raised it was disposed of by the district court of the two I would say that the district court found that as it it was in not Credible to believe that all the officers would be agitated whereas Mr. Cortez would not be and that was a finding she made after listening to all of them But even if that's true, even if he's agitated that is still lawful he didn't actually physically do anything as The court said in Duran, however, unwise it may be it's not illegal Which but I think the point and I think this is the answer opposing counsel Is He had a right to do this but The district court found according to opposing counsel That all the time they spent was spent on legitimate investigation they didn't just sort of say go to secondary and then go have a cup of coffee and Make it make him wait to punish him. They'd send the secondary and then spend all the time doing legitimate things The only response I think I could offer as a matter of law Asserting a constitutional right may not be the wisest thing to do at the time But it's still your right and there's no mechanism by which you're supposed to View the exercise of your First Amendment, right? There's how much time is to say how many times do you have to say why before a police officer is Obligated to respond to you. I mean you can say it ten times I don't think the officers ever obligated to respond to you You can't view your simple exercise of a of a right that the case law is clear You have as some suspicious behavior unlike some of the other cases where can we search your trunk? Well, what specifically are you looking for? Maybe I can help you find it That's not really the same thing as saying why why do you need to see my license? And that's the only Response, I think I could give to the court I'd be responsible Thank you very much
judges: Kozinski, Ikuta, Nguyen